## In re MILLER.
### Patent Appeal No. 3281.

Court of Customs and Patent Appeals.
June 12, 1934.

Forbes Silsby, of New York City (George B. Campbell, of Jackson Heights, N. Y., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner, involves the patentability of five claims (being all the claims) of an application for patent on a method of distilling tar.

For illustrative purposes, we quote claims 19 and 26:

"19. The method of distilling tar and of producing pitch and oils therefrom and from hot tar laden coal distillation gases, which comprises passing hot tar laden coal distillation gases into direct contact with tar to effect distillation of the tar and resulting enrichment of the gases in oil vapors, subjecting the resulting gases and vapors while still at a high temperature to a cleaning treatment so as to remove suspended tarry constituents therefrom and to give a substantially tar-free mixture of gases and vapors containing a large part of the oils in the form of vapors, and subsequently cooling the cleaned gases and vapors to condense oils therefrom, said oils being made up in part of oil constituents carried by the coal distillation gases which are brought into direct contact with the tar, and in part of oils distilled from the tar by the hot gases.

"26. The method of distilling tar and of producing oils and two pitch products therefrom and from hot coke oven gases, which comprises collecting the hot tar laden gases from a number of coke ovens in which coal is being destructively distilled in a common collecting conduit to form a composite gas stream flowing through the conduit at high temperature, passing tar to be distilled in the form of a flowing body through the conduit in direct contact with the hot tar laden gases so as to distill the tar and produce pitch, while preventing accumulation of hard pitch in the conduit and enriching the gases in oil vapors therein, subjecting the resulting enriched gases immediately after contact with the tar being distilled to electrical precipitation treatment at a high temperature so as to remove suspended pitch particles from the gases while leaving a large part of the oils in the form of vapors, and subsequently cooling the resulting gases and vapors so as to condense substantially tar-free oils therefrom."

The references cited are: Congdon 1,090,-813 March 17, 1914; Woidich 1,092,620 April 7, 1914; Becker 1,307,534 June 24, 1919; Lomax 1,408,105 February 26, 1922; Meston 1,444,627 February 6, 1923; Webert 1,481,399 January 22, 1924; Davidson (Brit.) 9,034 of 1914; Porter, Coal Carbonization (1924)—page 282; Lunge, Coal Tar & Ammonia (1916) — pt. 3, pages 1335, 1336.

The following condensed statement of the process describing its specific features, we take from the brief filed on behalf of appellant:

"More specifically the process of the appellant's invention comprises combining gases from a number of coke ovens while these gases are still at a high temperature and therefore contain substantially their original content of tar constituents, intimately contacting tar with these gases in such a manner that the gases are enriched in condensable oil vapors and the tar is distilled to pitch, then cleaning the gases, which now contain vapors of condensable oil constituents evolved from the coke ovens as well as from the tar distillation and also contain entrained tarry particles or pitch particles, by subjecting them to electrical precipitation whereby entrained particles are removed from the gases. The material removed is collected as a second pitch product. The cleaned gases containing condensable oil vapors are cooled so as to condense clean oils, i. e., oils that are substan-

tially free from tarry constituents, free-carbon particles," etc.

At another point it is said :

" * * * The distinguishing feature of the appellant's process lies in combining the step of enriching coal distillation gases, with a subsequent cleaning of the enriched gases by electrical precipitation to remove pitch while oils are retained in vapor form, and then cooling the cleaned gases to condense clean oils. It is this combination of steps with its attendant advantages set forth at length above, that is believed to constitute the appellant's contribution to the art."

All the claims were rejected upon the prior art cited. In addition, claims 20 and 26 were rejected on the ground of aggregation in including a plurality of coke ovens, and 21, 26, and 33 on the ground of lack of patentable co-operation between the specific manner of removing the entrained particles and the remaining steps of the process.

The Examiner, whose decision was approved in its entirety by the board, points out in detail the reasons for holding that such distinctions from claim 19 (other than the aggregative and nonco-operative elements), as appear respectively in claims 20, 21, 26, and 33, are features old in the art.

We think it clear that no limitations are embraced in claims 20, 21, 26, and 33 which would render them patentable unless claim 19 itself is allowable, and we shall, therefore, confine our discussion to the latter named claim.

Woidich seems to be the principal reference relied upon although Lomax and Becker are cited as being also basic. The Board of Appeals says:

"Claim 19 stands rejected on Woidich, Lomax and Webert. Woidich discloses destructive distillation of carbonaceous matter with the evolution of tar-containing gas, the introduction of additional tar at 96 into the hot, evolved gas, the removal of entrained liquid particles from the gas in the baffle tower D, and cooling of the gas to cause condensation. Lomax shows production of tar-containing coke oven gas, the treatment of such gas at an elevated temperature so as to electrically precipitate entrained particles therefrom without precipitation of the light oils, and subsequently cooling the gas to cause condensation."

It may be said that the patent to Woidich relates to process and apparatus for wood distillation and discloses means for the injection of tar into the gases passing through a pipe from the wood distilling ovens, the tar being injected at the top of a column to which the gases ascend. Afterwards the gases pass through a heat interchanger, which includes staggered partitions and a water cooling pipe, and finally through a tar separator means.

The patent to Becker relates to ammonia, tar, and benzol recovery process and discloses an electrical precipitator for precipitating tar from coke oven gas, which gas then passes through a cooler.

The patent to Lomax relates to the recovery of by-products from distilled gases, in which oven gas is passed through an electrical precipitator and then through a cooler.

Others of the references show the use of electrical precipitators in this art, and, as we understand it, appellant does not base any contention upon that particular feature of his claim, except as it is related to his process as a whole.

The gist of appellant's argument with reference to the Woidich patent (after pointing out that it relates to wood distillation) is that it does not disclose the removal of clean oils, nor the separation, with recovery separately, of the elements which it is appellant's object to recover.

It is argued that the tar, which is introduced into the gases at the top of the treating tower in Woidich, is not introduced for the same purpose—that is, for the purpose of distilling it—as is the tar which is introduced by appellant; that Woidich provides the introduction of tar only as an emergency to absorb any excessive oily vapors produced in the process of distillation; that after such absorption the combined product is recovered as a single product; that if electrical precipitation were applied in Woidich the ends sought by him would be defeated, because the tar element would immediately be removed without having absorbed the excessive oily vapors as desired; that Woidich is not concerned, as is appellant, with the enrichment of distillation gases by the introduction of oil constituents and subsequent cleaning of the gases to recover clean oils, and that the final results sought by the respective parties are wholly different.

It is said :

"The operation of the Woidich process and the functions of the individual steps of that process are diametrically opposed to the appellant's process as defined by, the appellant's claims."

Assuming all the foregoing statements to be correct, the fact remains that they comprise an argument as to the functions of the

steps of the process and not as to the steps themselves.

It is conceded in the brief for appellant that at least four of the patents, Lomax, Becker, Meston, and Webert, show the use of electrical precipitation for removing entrained particles from gases, but it is urged that none of these describe "a process for subjecting coal distillation gases to electrical precipitation after these gases have been enriched by the distillation of tar therein."

Upon this phase of the controversy the Congdon and Porter references become relevant. The Congdon patent discloses the spraying of tar into hot fresh gas evolved in the destructive distillation of coal, and the article on "Coal Carbonization" by Porter, published in 1924 (some three years before the filing of the involved application), shows the spraying of tar into a gas collector main in the course of a process which results in a distillation of light oils. Lunge, it may be said, also shows the spraying of tar into hot fresh coke oven gas.

It is argued on behalf of appellant that in the Congdon patent the tar does not undergo any substantial distillation. It is assumed that this might also be said of Lunge. As to the teaching of Porter it is argued that, while distillation of light oils results, it is confined to light oils, and that the enrichment of the gases would at most be relatively very small.

Here, it seems to us, the argument is predicated upon the degree rather than upon anything lacking in the step as a step. As is pointed out in the brief of the Solicitor for the Patent Office, claim 19 does not specify any degree of enrichment of the gases by appellant.

It is our conclusion that appellant merely proposes the utilization of features shown by the prior analogous art, each of which features functions in its new arrangement in the same manner as it functioned in the old, the only difference in result being a matter of degree, and that there was no error in the holdings of the tribunals of the Patent Office in this regard.

The rejection of claim 19, was, therefore, proper.

We shall not dwell upon the other claims, for the reasons already indicated.

The decision of the Board of Appeals is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate.